# IN THE MATTER OF ASSESSMENT OF TAXES ON COFFEE LANDS OF N. RUSSEL.

## N. RUSSEL *v.* TAX ASSESSOR.

APPEAL FROM TAX APPEAL COURT OF HILO, HAWAII.

SUBMITTED ON BRIEFS, JANUARY 10, 1899.  DECIDED MARCH 8, 1899.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE STANLEY, IN PLACE OF FREAR, J., ABSENT.

Where land owes its value, above the purchase-price from the government, to the fact that it is used for the cultivation of coffee it should not be taxed at the increased valuation, since by the statutes "to encourage the cultivation of coffee and ramie" that which creates the increased value is exempt from taxation.

OPINION OF THE COURT BY JUDD, C.J.

In the year 1897 Dr. N. Russel purchased from the government a lot of land No. 116 of 46.54 acres in the District of Olaa on the Island of Hawaii fronting on the Volcano Road, at the duly appraised price of $6 per acre; also Lot 115 of 50 acres, a "back lot," at $4 per acre, two "inside" lots, Nos. 403 and 409 of 50 acres each, at $3 per acre. For assessment and taxation purposes these lots were in January, 1898, returned by the owner at the valuation placed thereon by the government at the time of the purchase; their values aggregated $779.24 for the whole 196.24 acres. The tax assessor assessed them in gross at $2,450. On Dr. Russel's appeal the Tax Appeal Court reduced the amount by 25% leaving the appel-

lant's assessment to stand at $1,833. This was $1,054 more than the amount returned by the tax payer. The valuation made by the assessor is over three times the purchase price. The taxpayer and the assessor both appeal to this Court. By the Act of the Legislature of 1892 (Chap. 58), "For the term of ten years all coffee trees and ramie plants and all coffee and ramie produced in this country; and all mills, machinery, appliances, tools and buildings used exclusively in the care, cultivation or preparation of coffee or ramie for market shall be and hereby are exempted from all taxes and import duties." The Legislature of 1898 extended the term of the exemption to ten years from the first day of July, A. D. 1898.

It is contended by the Attorney-General for the assessor that the assessment was made upon the fair unimproved market value of the lands in question, which value has increased since their purchase from the government, and the assessor did not tax any property exempted by law. The taxpayer contends that the lots of land in question, if they have increased in value since the date of their purchase, owe their increased value entirely to the prospects of coffee growing becoming successful in that region and is the result of the labor and capital expended by the planter upon them in the cultivation of coffee; that the value of these lands is wholly due to the exempt property thereon. It is claimed that the assessor has raised the value of these lots for taxation purposes from $6 an acre (the price paid for them in 1896) to $10 an acre in 1897 and in 1898 to $15.

We are of opinion that if it can be shown that the land in question has increased in value by reason of causes or events not attributable to the fact that they are used for the cultivation of coffee, they would be taxable on their "fair cash value" as all other land is taxable. To illustrate this, if the coffee culture should be abandoned and the land be put into sugar cane it would be taxable.

Many other coffee planters appealed from the Tax Appeal Court and joined with Dr. Russel, the appellant in this case, and it was agreed that the decision of this Court in the present

case should be decisive of the other cases. Considerable testimony was taken on both sides. The territory in question was formerly in the main part unbroken dense forest, a jungle in fact, owing to the copious rains of that district. The expense and labor in clearing the land and render it suitable for coffee growing is very great. In order to develop the resources of the land and make it accessible to cultivators the "Volcano Road" was constructed by the government at great public expense. The land was deemed suitable for the growth of coffee and to encourage its cultivation not only was the land placed to investors at what was considered low values, but the Act was passed exempting the coffee trees and coffee produced and everything necessary to its growth and preparation for market from taxation for ten years from 1892. The coffee planters testified that though they are still hopeful, the enterprise has not yet proved profitable. About one third of the applicants for land for coffee cultivation in that region have abandoned their holdings. Sales of some partly established coffee plantations have been made at prices higher than that paid by the original grantees of the government, and in some instances higher than the values placed on them by the assessor. But the sales were all of coffee lands as such and their value was nominal except as used for coffee culture. The fact that upon some parcels of the land were raised small crops, as Indian corn, cabbages and potatoes, almost exclusively for the consumption of the cultivator and his employees, not capable of profitable sale outside of the neighborhood, are instanced to show that these lands have value distinct from coffee raising. But if the coffee culture of that region should be abandoned as unprofitable there is no evidence that the raising of such crops would be profitable. If coffee should fail, cabbages and corn would very likely fail, owing to the distance from any market. We may fairly deduce from the evidence that coffee culture in the region is still in its experimental stage. That the Legislature thought so in 1898 is apparent from the extension of the exemption from taxation for ten years and before the term of the first exemption had expired. To tax the land a higher rate from year to year

because the coffee trees on them produce more berries as they grow older would be in effect to tax the coffee trees and their product and deprive the owners of the legislative exemption.

To distinguish between the unimproved value of an acre of land in that region and its value for coffee culture is well nigh impossible. The Tax Appeal Board, composed of men familiar with the district, did not assume to value each land separately, but simply reduced all the assessments by 25%. No reasons are given by the Board. In default, therefore, of evidence that the lands in question have increased in value above the prices paid them when unimproved, we find on the evidence that whatever increased value they may have, as shown by sales, is owing to the coffee culture and that this increment of value is not taxable for the year 1899 by reason of the statute of exemption.

It may be asked for how long shall this principle and rate of taxation be followed? We answer, until it can be shown that the lands have value over and above the purchase price fixed by the government, independent of their use in the production of coffee, the statutory exemption still existing.

*Little & Galbraith* for taxpayer.

*W. O. Smith, Attorney-General,* for the Assessor.